IN THE COURT OF CRIMINAL APPEALS OFTENNESSEE
AT NASHVILLE
Assigned on Briefs October 9, 2012

**EVETTA MAI MCGEE v. STATE OF TENNESSEE**

**Direct Appeal from the Circuit Court for Bedford County**
**No. 17221      Robert Crigler, Judge**

**No. M2012-00343-CCA-R3-PC - Filed February 15, 2013**

The petitioner, Evetta Mai McGee, appeals the denial of her petition for post-conviction relief. The petitioner entered an open plea to one count of rape and was subsequently sentenced to a term of eleven years in the Department of Correction. On appeal, she contends that her plea was not entered knowingly and voluntarily because she did not comprehend that a "best interest" plea was actually a plea of guilty. She further contends that her plea was not proper because trial counsel was ineffective in failing to adequately prepare and interview witnesses. Following review of the record, the denial of post-conviction relief is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Forest Durard, Jr. (on post-conviction) Shelbyville, Tennessee, for the appellant, Evetta Mai McGee.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; Robert Carter, District Attorney General; and Michael Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Procedural History and Factual Background**

The relevant facts underlying the petitioner's conviction, as recited by the State at the guilty plea hearing, are as follows:

[I]n August 2008 [the petitioner], Brooke Whitaker, Kelly Dodson, Brandy Holden, [the victim] and Kim O'Neal were all housed in the same cell at the Bedford County Jail.

On the night of August 20 after lockdown, the lights are cut off by the facility and the door to the cell is locked. [The victim] was in her bunk when she was approached by [the petitioner] and Brooke Whitaker. They held her down and they began sexually assaulting penetration of her vagina digitally. Also included oral sex in the form of cunnilingus performed on her.

At one point Brooke Whitaker yelled for other girls to help hold her down. Kelly Dodson and Brandy Holden came over and assisted in holding down [the victim] while the sexual assault continued.

They did ultimately let go. Essentially everyone let go.

[The victim] checked herself that night. Basically had to cry herself to sleep. She is in the same room with these persons.

The next day after many hours, ultimately she did report it to the authorities.

Investigation was then done, led by Capt. Becky Hord of the sheriff's department in which statements were obtained from numerous individuals. Virtually everyone in the cell gave a statement including Kim O'Neal who was not a participant. She was the only one that was not a participant as a victim or perpetrator. Also girls in other cells who heard [the victim] screaming no, stop and things like that while the assault went on.

When the petitioner committed the above actions, she was serving a nine-year sentence for possession, sale, or manufacture of drugs. Following the incident, a Bedford County grand jury indicted her for aggravated rape. After negotiations, the petitioner entered an open best interest plea of guilty to one count of rape. The trial court, based heavily upon the petitioner's prior convictions, sentenced her to a term of eleven years in the Department of Correction, which was to be served consecutively to the prior nine-year sentence. The petitioner filed a direct appeal challenging the enhancement of her sentence, but this court affirmed. *State v. Evetta Mai McGee*, M2009-02266-CCA-R3-CD (Tenn. Crim. App., at

Nashville, Jan. 13, 2011).

Thereafter, the petitioner filed a pro se petition for post-conviction relief alleging that her plea was not entered knowingly and voluntarily and that she had been denied her right to the effective assistance of counsel. Counsel was appointed, and an evidentiary hearing was held at which the petitioner, trial counsel, a detective involved in the case, a witness to the crime, and an attorney who represented a co-defendant testified.

The petitioner testified that her family retained trial counsel to represent her prior to the preliminary hearing in the case. For the entire course of her case, until two days before trial, the petitioner, along with her co-defendants, intended for the case to be tried. The petitioner testified, however, that two days before her scheduled trial, trial counsel approached her regarding a best interest plea agreement because two of the co-defendants would now be testifying against her. According to the petitioner, he explained to her that she would not be admitting guilt. She testified that he also told her that if she went to trial, he believed she would be convicted and would receive a twenty-five year sentence at 100%.

The petitioner stated that she did not understand that she was actually entering a guilty plea. She thought a best interest plea was distinguishable from an actual guilty plea. She stated that she did not understand that a best interest plea and a guilty plea produced the same end result, and, further, she thought she would be sentenced differently. On cross-examination, the petitioner admitted that the distinction between the two types of pleas was in her mind- she did not want "guilty." She stated she entered a "best interest plea" not a "best interest plea of guilty."

The petitioner acknowledged that during the plea colloquy the court continually used the word "guilty," and she was concerned. But she maintained that she looked to trial counsel for guidance, and he reassured her it was a best interest plea. She also acknowledged that the plea form stated that it was a "best interest petition to enter plea of guilty." She testified that she also received letters from trial counsel which also referred to her plea in the same manner. She stated that she was aware that she was going to be sentenced to a term between eight and twelve years to be served at 85% and that the sentence would be served consecutively to her drug sentence. However, she maintained that she did not think that she was pleading "guilty." The petitioner pointed to the plea transcript where she herself did not answer the question, "what is your plea to the amended charge of rape?" Trial counsel was the one who actually answered.

The petitioner testified that she felt that trial counsel also failed to properly investigate the case, contending that he did not fight for her. The petitioner recalled that trial counsel did not visit her from February to June after she had been transferred to the Department of

Correction pending trial. She testified that, as of three days prior to trial, he had not interviewed witnesses and was not prepared for trial. She stated that she had provided names of witnesses who had been incarcerated at the jail at the time of the incident who could have testified that on the morning following the incident, the petitioner and the victim ate breakfast together, and the victim let the defendant fix her hair. The petitioner contended that trial counsel never spoke to these witnesses.

The petitioner testified further that when she was visited by trial counsel two days before her scheduled trial, he provided her with copies of the statements the co-defendants had given. He also detailed an interview he had had with Ms. O'Neal which was not favorable for a possible trial for her or Brooke Whitaker. She also acknowledged that trial counsel hand-delivered a letter to her which detailed the plea agreement and its terms. After reading and reviewing that letter, the petitioner indicated her desire to accept the agreement.

The next witness called was Detective Becky Hord, who was the investigator in the case. She stated that she spoke with trial counsel on multiple occasions regarding the incident and discussed the evidence available in the case. When asked, Detective Hord could not recall any witnesses who saw the petitioner and the victim eating breakfast together on the morning following the incident.

Thereafter, Kim O'Neal was called to the stand. She testified that she had been in the cell where the incident occurred on the night in question. While she was not involved, she did witness part of what had occurred. Ms. O'Neal stated that she was interviewed by investigators after the incident, and she spoke with trial counsel a few days before the plea. She recalled relating to him that while the incident may have started as horseplay, it went too far. Ms. O'Neal then related the circumstances of the rape, which included holding the victim down while she was yelling "no."

Trial counsel testified that he was retained by the petitioner's family, and he investigated the facts and circumstances of the crime. He stated that he spoke with Detective Hord and received a large amount of information regarding the evidence. Trial counsel testified that in the beginning, the four co-defendants had an unofficial joint defense, although each was separately represented. During this period, discovery was shared among all. Nonetheless, trial counsel had researched the other co-defendants and was prepared to discredit them if they chose to testify against the petitioner. Shortly before the trial was to have occurred, two of the co-defendants entered into plea agreements and gave statements which strongly implicated the petitioner and Brooke Whitaker. At this point, trial counsel and Ms. Whitaker's attorney decided to interview Ms. O'Neal. Based upon her statements to them, it became clear to trial counsel that success at trial was not likely to occur, and the prior strategy was substantially impacted.

At this point, trial counsel and Mr. Parker went to the jail and met with the petitioner and Ms. Whitaker. They shared all the statements with them and told them that they would likely be convicted at trial of the indicted offense of aggravated rape. Trial counsel also informed the petitioner that, because of her prior convictions, she was likely to be sentenced at the top of the range and could spend well over twenty years in jail.

Trial counsel was able to negotiate a plea agreement with the State whereby she entered a best interest plea to rape, with the trial court to determine sentence length between eight and twelve years. Trial counsel testified that he thoroughly explained this agreement to the petitioner. Trial counsel did explain to the petitioner that she would not have to admit her guilt in order to accept the agreement. After a discussion of the offer, the petitioner decided to accept it. Trial counsel later hand delivered a letter detailing the agreement to the petitioner and gave her the option to accept or reject the offer by checking a box and signing her name. The petitioner accepted and signed.

Also called to testify at the post-conviction hearing was Clay Parker, who had been appointed to represent Brooke Whitaker He verified that the defense strategy had initially been one of collaboration between the co-defendants and that, until just the week before trial, they intended to go to trial. Upon learning that two of the co-defendants were implicating the petitioner and Brooke Whitaker, the strategy was changed. Although having originally been told that Ms. O'Neal had not witnessed anything, they decided to speak with her and verify the information. At that point, they learned that she too had witnessed the rape. Afterwards, he and trial counsel met with their clients and reviewed all the evidence with them. While not telling their clients that they could not proceed to trial if they wished, he and trial counsel both informed them that the chances of success were slim.

After hearing the evidence presented in the case, the post-conviction court determined that the petition was not meritorious and denied relief. This timely appealed followed.

**Analysis**

On appeal, the petitioner contends that she was denied the effective assistance of counsel and that her plea was not entered knowingly and voluntarily. In evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). In making this determination, the reviewing court must look to the totality of the circumstances. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see also Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). Indeed, a

court charged with determining whether . . . pleas were "voluntary" and "intelligent" must look to various circumstantial factors, such as the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate that guilty pleas be voluntarily and intelligently made. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citing *Alford*, 400 U.S. at 31).

To succeed in a challenge for ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the petitioner must establish (1) deficient representation and (2) prejudice resulting from the deficiency. In the context of a guilty plea, to satisfy the second prong of *Strickland*, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lockhart*, 474 U.S. at 59; *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997). The petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably-based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceeding. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This deference to the tactical decisions of trial counsel, however, is dependant upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). "A trial court's findings of fact underlying a claim of ineffective assistance of counsel are reviewed on appeal under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d)). However, conclusions of law are reviewed under a purely de novo standard, with no presumption of correctness. *Id*. at 458.

## I. Ineffective Assistance of Counsel

The petitioner asserts that the post-conviction court erred in denying her petition because she was denied her right to the effective assistance of counsel. Specifically, she contends that trial counsel failed to adequately prepare and interview all the witnesses suggested by the petitioner. She asserts that "[h]ad trial counsel spent adequate time trying to interview witnesses before the eve of trial, there would have been opportunities to discredit their testimony." She also faults trial counsel for relying upon information received from Investigator Hord and written witness statements rather than doing his own investigation. In denying relief on this ground, the post-conviction court held:

> There [are] two issues raised in the post conviction petition: Whether the plea was voluntarily, intelligently and understandingly entered; and whether [trial counsel] was ineffective by failing to do an adequate investigation or ineffective in any respect.

> The contrary is true. The whole entirety of the proof is that [trial counsel] did a thorough investigation; negotiated a favorable settlement, where he got the rape - - the aggravated rape charge, 15 to 25, got a plea down to rape, instead of aggravated rape, in a B range of 8 to 12.

> And the petitioner, in a post conviction case, has to prove her allegations by clear and convincing evidence.

> And as far as the . . . issue of effective assistance of counsel, the proof is that [trial counsel] provided not only adequate assistance, but excellent assistance. I can't think of anything they have shown that he did wrong, to be honest with you.

We find nothing in the record which preponderates against those findings. Trial counsel testified specifically that he had investigated the facts and circumstances of the case and that he was prepared for trial. The post-conviction court accredited the testimony and, as has been repeatedly held, it is not the province of this court to reweigh or reevaluate credibility determinations made by the trier of facts. *See Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997).

The record indicates that trial counsel spoke at length to Detective Hord, which her testimony and that of Mr. Parker also verified, and obtained information about the investigation. Trial counsel obtained discovery from the State and reviewed that evidence with the petitioner. He agreed with the petitioner that until just prior to trial, the strategy had

been to proceed to trial. Trial counsel indicated that, despite the united front of the co-defendants, he was prepared to try and discredit them if they chose to testify against his client. However, upon learning that two co-defendants had entered plea agreements and learning how damaging Ms. O'Neal's testimony would be, trial counsel then gave the petitioner an honest assessment of the effect on her case. Nonetheless, had she insisted upon going to trial, trial counsel was prepared.

Trial counsel throughly explained the best interest plea agreement to the petitioner and made her aware of the terms she was facing, even reducing it to writing and reviewing it with her. It was because of his efforts in her case that the petitioner was able to avoid a Class A felony conviction and a fifteen to twenty-five year sentence, receiving instead only an eleven-year sentence. Trial counsel cannot be faulted for his actions in light of the fact that two co-defendants chose suddenly to implicate the petitioner.

With regard to the petitioner's assertions that trial counsel failed to interview witnesses, she has simply failed to establish her claim. The petitioner did not present testimony from any of the alleged witnesses at the post-conviction hearing. Thus, she presented no evidence, other than bare allegations, as to what trial counsel would have actually discovered had these alleged witnesses been interviewed. This court has continually held that in order to establish entitlement to post-conviction relief when making an allegation that trial counsel failed to discover, interview, or present witnesses in support of the defense, a petitioner must present such a witness at the post-conviction hearing. *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). The post-conviction court could not assume what a possible witness's testimony would have been and, further, that it would have aided the petitioner's case. By failing to present the witnesses at the hearing, the petitioner has failed to establish her claim and is entitled to no relief.

## II. Knowing and Voluntary Plea

The petitioner also contends that her plea was not entered knowingly and voluntarily because she did not believe that a best interest plea was a "guilty plea." On appeal, she references her "earnest belief [that] her best interest plea was not an admission of guilt," that she believed she would be punished differently under a best interest plea, and that she did not directly answer the court as to what her plea was.

In its findings denying the petitioner relief on this issue, the post-conviction court, referencing the transcript of the plea hearing, makes note of how the court explained in great detail to the petitioner the plea she was entering:

> As to the voluntary, intelligently and understandingness [sic] of the

plea, [post-conviction counsel] has done an excellent job of picking one line out of the transcript, but the transcript is replete with explanations about what this means.

For instance, on page 14, I say, "This has been stated to me this is a best interest plea, which means you are not admitting your guilt. However, I must inform you that it will have the same effect as if you plead guilty. You don't have to actually admit your guilt. It is still a conviction of rape, just as if you said you were guilty. Do you understand that . . .?"

[The petitioner replied,] "Yes."

That is just one part.

Then we turn at the very outset, I was asking [the petitioner] about Exhibit 1, I guess: "Can you recognize the petition to enter a plea of guilty in your case?"

[Trial counsel] said, "It is best interest."

I said: "It is still a plea of guilty. Do you recognize this document I am holding up. If you can't see if from the distance we are apart, I will have Captain Hord take it to you."

[Trial counsel] said, "She is comfortable entering a best interest. It will result in a guilty plea. She is entering it because it is best interest."

I say, "I will talk to her a little bit about that."

And then I asked her, "Did you sign this document? Did you read it in its entirely before you signed it? Was there anything in it you did not understand?"

[The petitioner] said she read it, she signed it, and she understood everything. She didn't want anything else explained to her. There was nothing interfering with her ability to understand what you are doing.

Then if you turn to page - - I think it was - - [post-conviction counsel] took out from page 18, where [trial counsel] said, "Guilty," when I said, "What is you plea to the amended charged of rape?"

But if you back up to page 16, I asked for the proposed resolution in the case.

And [the State] said, "The same for each defendant. They will each be pleading guilty as a best interest plea to the amended charge of rape. This is an open plea, and that you will determine the length of the sentence, I suppose the manner of service, although I don't think alternative sentencing. They are both already in the Department of Corrections [sic], serving other sentences. We have already agreed that it will be consecutive or in addition to the sentences they are currently serving, so the length of the sentence will be the only real issue the Court will have to determine.

Then I say, "Are you moving to amend the aggravated rape to rape in order to accomplish this settlement?"

Everybody says, yes, that they agree to that.

I say, "[petitioner], did you listen to the proposed settlement in this case?"

And she answers, "Yes."

Then I ask her, "Is that what you have agreed to?"

And [trial counsel] said, "Yes."

And then I said, "She is looking at 8 to 12."

Then you all told me she had one prior felony conviction.

Then again, I went back to it.

Question: "[Petitioner], is that what you have agreed to?"

And her answer was, "Yes."

Then I asked her, "Did you hear the proposed settlement?"

Her answer is, "Yes."

-10-

I asked her, "Did that settlement come about from negotiations between [trial counsel] and the District Attorney's office, and did [trial counsel] explain this to you before you signed this petition I asked you about a minute ago?"

And the answer is, "Yes."

I asked her, "Do you want me to accept you plea of guilty to the amended charge of rape, pursuant to what had been announced as being in your best interest?"

And her answer is, "Yes."

. . . .

Then I took the other defendant's plea after that and reiterated that a best interest plea had the same effect as a conviction, and I find [the transcript of the plea hearing] persuasive; [and] don't find her credible when she says she didn't understand what she was doing when she pled guilty.

I [found the petitioner] voluntarily, intelligently and understandingly pled guilty at that time, and I still think she did.

Again, we conclude that nothing in the record preponderates against these findings. Trial counsel testified that he explained the agreement to the petitioner on multiple occasions, even detailing it in a letter which he reviewed with the petitioner. The petitioner signed the agreement indicating that she understood it. She failed to express any misunderstanding of the agreement at the plea hearing when she was given the opportunity. Indeed, her own testimony at the post-conviction hearing was that she understood she was pleading guilty to rape and would receive a sentence of eight to twelve years.

Her only assertion was that she did not understand that a best interest plea was an actual guilty plea. However, what her argument fails to account for is that she did not admit guilt. By entering a best interest plea, she did not acknowledge that she committed the crime, *i.e*, was guilty, rather she admitted only that she accepted what the State's evidence would be and that it was in her best interest to accept the plea. Her argument appears to be one of semantics and titles rather than one regarding her understanding of the plea. The petitioner even acknowledged at the hearing that the distinction was in her mind. She was aware of the charge and the possible resulting sentence. Moreover, as referenced by the post-conviction court, the transcript of the plea hearing is strong evidence against and belies the petitioner's contentions that she did not understand the distinction. Following review of the record, we

-11-

conclude that the petitioner has failed to establish that the proof preponderates against the findings made by the post-conviction court that she received the effective assistance of counsel and that her plea was entered knowingly and voluntarily. *See State v. Mackey*, 553 S.W.2d 337, 340 (Tenn. 1977).

## CONCLUSION

Based upon the foregoing, the denial of post-conviction relief is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE